UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DERRICK TAYLOR,              :
    Plaintiff,           :
                             :           PRISONER
    v.                   :   CASE NO. 3:10-cv-245 (HBF)
                             :
BRIAN K. MURPHY, et al.,     :
    Defendants.          :

<u>RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 14]</u>

In this civil rights action, plaintiff Derrick Taylor ("Taylor") challenges the requirement that inmates confined in Phase I of the Security Risk Group Safety Threat Member ("SRGSTM") program wear handcuffs behind their back during recreation. He alleges this requirement violates his Eighth Amendment right to be free from cruel and unusual punishment and that defendants have denied him the opportunity for meaningful exercise. Defendants have filed a motion for summary judgment. For the reasons that follow, defendants' motion is DENIED.

I.  <u>Standard of Review</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is therefore entitled to judgment as a matter of law. <u>See</u> Rule 56(a), Fed. R. Civ. P.;

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The
moving party may satisfy this burden "by showing – that is
pointing out to the district court – that there is an absence of
evidence to support the nonmoving party's case."  PepsiCo, Inc.
v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam)
(internal quotation marks and citations omitted).  Once the
moving party meets this burden, the nonmoving party must "set
forth specific facts showing that there is a genuine issue for
trial," Anderson, 477 U.S. at 255, and present such evidence as
would allow a jury to find in his favor in order to defeat the
motion for summary judgment.  Graham v. Long Island R.R., 230
F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all
ambiguities and draws all permissible factual inferences in favor
of the party against whom summary judgment is sought.  Patterson
v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If
there is any evidence in the record on a material issue from
which a reasonable inference could be drawn in favor of the
nonmoving party, summary judgment is inappropriate.  Security
Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d
77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a
scintilla of evidence in support of the [plaintiff's] position
will be insufficient; there must be evidence on which the jury
could reasonably find for the [plaintiff].'"  Dawson v. County of

Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 252)).

II. Facts[1]

Taylor is serving an eighty-year sentence for murder and escape. The Department of Correction determined that Taylor was a leader of the Latin Kings and has designated him a Security Risk Group Safety Threat Member ("SRGSTM"). Taylor disagrees with the determination and designation.

In 2003, Taylor was transferred to New Jersey pursuant to the Interstate Compact Agreement. While in New Jersey, Taylor assumed responsibility for hiding a loaded .32 caliber automatic weapon in a hallway in the prison. He pled guilty to disciplinary charges for possession of the gun but invoked his Fifth Amendment privilege and declined to state how he obtained a gun while in prison. In 2006, Taylor returned to Connecticut.

In September 2008, Taylor received a disciplinary report for security risk group affiliation after documents discussing Latin King activity and leadership positions were found in his property. Taylor pled guilty to the charge. In October 2008, Taylor pled guilty to a SRGSTM disciplinary report. He asserted his Fifth Amendment privilege and declined to respond when asked whether he wrote a letter in August 2008 accusing another inmate

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement, Taylor's Local Rule 56(a)2 Statement and the exhibits provided by both parties.

3

of misrepresenting the Almighty Latin King and Queen Nation, and whether he charged another inmate with five violations of the Almighty Latin King and Queen Nation. Taylor was transferred to Phase I of the SRGSTM program. Although it is intended that inmates remain in Phase I for 120 days, Taylor was in Phase I from October 2008 until March 2010.

In March 2009, Taylor received a disciplinary report for possession of contraband when several pieces of metal, a screw and a wire were found in his shower shoes. The items can be attached to a toothbrush to make a weapon or inserted into an electrical outlet to start a fire. Taylor contended that he was going to use the items to fashion a device to heat water to make instant oatmeal or hot chocolate. Taylor pled guilty to the charge.

In Phase I SRGSTM, inmates generally recreate in groups of eight inmates. At times, as many as twelve inmates may be included in the group. On October 5, 2009, the Department of Correction changed the recreation policy for Phase I SRGSTM to require that all inmates recreate with their hands cuffed behind their backs. With few exceptions, SRGSTM inmates are not required to wear leg irons or belly or tether chains during recreation. Inmates in SRGSTM Phases II and III are allowed to recreate without handcuffs.

Prior to the change in policy, there were many fights during

4

SRGSTM recreation: 34 fights in Phase I and 12 in Phase II during calendar year 2009; 23 fights in Phase I and 10 in Phase II during calendar year 2008; and 30 fights in Phase I and 13 in Phase II during calendar year 2007. Inmate fights endanger the safety and security of the correctional facility. All inmates in the recreation yard are at risk of injury as are the responding correctional officers. The number of fights during SRGSTM Phase I recreation has decreased since the change in policy. Defendant Quiros projected that the number of fights for calendar year 2010 would be 10 in SRGSTM Phase I and 2 in Phase II.

Taylor is incarcerated in a single cell. He describes his cell as his whole world. He seals his door with socks so he does not hear other inmates. He states that he cannot live with another inmate. When he has been assigned a cellmate, violence between the two has resulted. Taylor states that he hates all other inmates. He cannot tolerate their noise, smell, blabbering and stupidity. Taylor follows a set routine each day. He wakes up and eats breakfast at 6:30 or 7:00 a.m. He picks up boxes and other items from the floor and puts them on the top bunk. Taylor then washes the floor on his hands and knees using a washcloth and shampoo. He rinses the floor, wipes off the boxes and replaces them on the floor. Taylor then wipes off the top bunk, books and desk. After cleaning his cell, he makes coffee and reads or listens to news, political programs, music and baseball

games on the radio. If recreation is called after 9:30 a.m., Taylor goes to recreation. If recreation is before 9:30 a.m., he will not go because he has not finished cleaning his cell.

Dr. Wright opines that there is sufficient room in Taylor's cell for him to perform vigorous calisthenic exercises such as push-ups, sit-ups, jumping and running in place. Taylor does a couple hundred push-ups in his cell every day. He acknowledged that he could perform sit-ups but does not do so. Taylor does not do jumping jacks or run in place in his cell. He states that the noise generated by these two activities could cause problems with inmates living around or below him and has provided affidavits from other inmates who encountered problems doing vigorous exercise in their cells. Taylor also has arthritis in his ankle. At times, his ankle is so swollen that he has difficulty walking. Although he was handcuffed, Taylor was able to walk about the SRGSTM Phase I recreation yard for five hours per week.[2]

---

[2] In reply to Taylor's response to the motion for summary judgment, defendants argue that several statements in their Local Rule 56(a)1 Statement should be deemed admitted because Taylor did not oppose those statements properly in his Rule 56(a)2 Statement.
    Defendants' statements 27 and 29 concern the number of assaults in the SRGSTM Phase Program recreation yard. Taylor's lack of knowledge regarding the statistics is not a sufficient basis upon which to object to the statements. See Eiden v. McCarthy, 531 F. Supp. 2d 333, 338 (D. Conn. 2008) (deeming admitted any statement of fact regarding which non-moving party claims he has insufficient knowledge to agree or disagree as long as the statement is supported by the record). The Court deems the statistics admitted.
    Defendants' statements 30, 50, 52 and 53 contain opinions of Warden Quiros and Dr. Wright. Taylor objected to many of these

6

III. Discussion

Defendants move for summary judgment on two grounds: Taylor's constitutional rights were not violated and defendants are protected by qualified immunity.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 351 (1981). To state an Eighth Amendment claim, an inmate must allege facts demonstrating the failure of prison officials to provide for inmates' "basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety." DeShaney v.

---

statements on the ground that an opinion is not a fact. While opinion evidence may be considered on a motion for summary judgment, there is little caselaw considering whether expert opinions may be included in a statement of material facts in support of a motion for summary judgment. See, e.g., Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (facts admissible in evidence properly considered on motion for summary judgment); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Expert opinion is admissible and may defeat summary judgment only where it appears that the *affiant* is competent to give an expert opinion"); Manning v. Potter, 250 Fed. Appx. 743, 744 (7th Cir. 2007) (disregarding portions of pro se plaintiff's Rule 56 Statement containing legal conclusions, opinions, immaterial facts and facts unsupported by citations to the record). Defendants' statements are not deemed admitted in their entirety. Dr. Wright's opines that Taylor can perform sit-ups, push-ups, jumping and running in place in his cell and that these exercises provide sufficient exercise to satisfy constitutional requirements. Taylor conceded that he performs push-ups and could perform sit-ups in his cell, but objected to Dr. Wright's statement that there was sufficient room to jump and run in place because he disagrees with Dr. Wright's statement that the only furniture in the cell was bunk beds. Taylor also presents evidence that he cannot jump or run in place in his cell without antagonizing other inmates and risking a physical altercation. The Court has considered Taylor's disagreement and evidence in this ruling.

Winnebago County Dept. of Social Servs., 489 U.S. 189, 200 (1989). An inmate may prevail on an Eighth Amendment claim "only where he proves both an objective element-that the prison officials' transgression was 'sufficiently serious'-and a subjective element-that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The objective element is satisfied where the inmate shows that the deprivation he alleges is sufficiently serious, i.e., that his confinement under the alleged conditions violates contemporary standards of decency. The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk of serious harm. See id. at 185-86. Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw that inference." Farmer, 511 U.S. at 837.

Both the Supreme Court and the Court of Appeals for the Second Circuit have acknowledged that exercise is a basic human need that must be provided for inmates. See Wilson v. Seiter, 501 U.S. 294, 304-05 (1991); Williams v. Greifinger, 97 F.3d 699, 704 (2d Cir. 1996); Sostre v. McGinnis, 442 F.2d 178, 193 & n.25 (2d Cir. 1971). Restrictions on exercise should not be

8

"routine." Restrictions must be limited to unusual circumstances or situations where restrictions are needed for disciplinary reasons. See Hope v. Pelzer, 536 U.S. 730, 737 (2002) (noting that penological concerns may be considered in reviewing an Eighth Amendment claim); Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

Defendants first argue that Taylor has no constitutional right to recreate without restraints because the conditions in Phase I SRGSTM did not involve the unnecessary or wanton infliction of pain or punishment as would be required to state an Eighth Amendment violation. They argue that prison officials should be afforded wide-ranging deference when they adopt policies addressing conditions dealing with institutional safety and security. Defendant Quiros adopted the restraint policy to make the prison safer in response to inmate fights during recreation. The policy has been successful in reducing the number of inmate fights during recreation. Defendants argue further that this limitation on the right to exercise is acceptable so long as some exercise is available and provide a medical opinion that Taylor can perform vigorous exercise in his cell.

Taylor contends that he was denied all meaningful exercise. He states that he was unable to walk about with any confidence with his hands cuffed behind his back because he would be unable to maintain his balance. He also states that he cannot engage in any vigorous calisthenic exercises in his cell, like running in place or performing jumping jacks, because there is insufficient space and the noise and shaking caused by these activities would result in altercations with inmates living alongside and below him. Taylor provides affidavits from other inmates who were assaulted for performing such exercises in their cells. In light of the contradictory evidence presented, the Court concludes that there is a genuine issue of material fact regarding Taylor's ability to engage in meaningful exercise and whether defendants were aware of any inability to perform in-cell exercise. Accordingly, the motion for summary judgment is denied on this ground.

Defendants also argue that they are protected by qualified immunity. The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware. See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the Court

considers two questions: first, whether, construing the facts in favor of the non-moving party, there is a violation of a constitutionally protected right; and second, whether, considering the facts of the case before it, that right was clearly established at the time of the incident.  Qualified immunity is warranted unless the state official's conduct violated a clearly established constitutional right.  See Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 813, 815-16 (2009) (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order).  To evaluate whether a right is clearly established, the Court must determine whether it would be clear to a reasonable correctional official that his conduct in these circumstances was unlawful.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).  The analysis focuses on cases from the Supreme Court and Second Circuit.  See Williams, 97 F.3d at 706.

At the time the recreation policy was implemented, the Second Circuit had created a safety and security exception to the proposition that exercise is a basic human need that must be provided for all inmates.  See id. at 704 (acknowledging safety exception to Eight Amendment right to exercise and holding that inmate should not be denied all out-of-cell exercise because he refused to take a tuberculosis test rather than for safety or security reason).  The Second Circuit noted, however, that

"restrictions on exercise must be limited to 'unusual circumstances' or circumstances in which exercise is 'impossible' because of disciplinary needs." Id. Concerning the opportunity for exercise, the court cited with approval a Fourth Circuit case which "specifically found that it would not be possible to grant summary judgment to prison officials on their claim of qualified immunity, even in the case of an inmate who had been denied exercise because of his 'incorrigibly assaultive nature,' without '[a] detailed review of the feasibility of alternatives ... such as solitary out-of-cell exercise periods, or the adequacy of in-cell exercise.'" Id. at 705 (quoting Mitchell v. Rice, 954 F.2d 187, 193 (4th Cir.), cert. denied, 506 U.S. 905 (1992)). See also Dumpson v. McGinnis, 348 Fed. Appx. 658, 659 (2d Cir. 2009) (affirming limitations on exercise for legitimate safety concerns where defendants had established at trial that decision was reasonable in light of inmate's disciplinary history).

Defendants argue that the restraint policy was required to reduce the number of inmate altercations during Phase I SRGSTM recreation. Although they provided statistics on the number of inmate attacks before and after implementation of the policy, they provide no information regarding the number of inmates involved in the attacks and whether the inmates involved had received prior disciplinary reports for similar activity within the Department of Correction. Taylor states that he has a job as

a prison barber where he is allowed to use clippers and razors and, as long as he as been confined in a single cell, he has not received any disciplinary reports for violent activity. He received no such disciplinary charges while in SRGSTM Phase I. In addition, the record contains conflicting evidence regarding the feasibility of engaging in vigorous exercise in Taylor's cell.

Defendants have identified cases from this district holding that recreating in restraints did not rise to the level of an Eighth Amendment violation. See Ruffino v. Lantz, No. 3:08cv1521(VLB), 2010 WL 908993, at *5-6 (D. Conn. Mar. 9, 2010) (attending recreation handcuffed in front for thirty days did not violate the Eighth Amendment); Shakur v. Sieminski, No. 3:07cv1239(CFD), 2009 WL 2151174, at *4-6 (D. Conn. Jul. 15, 2009) (holding that opportunity for in-cell and indoor recreation when outdoor recreation was denied and shortening of recreation period for legitimate penological reasons did not violate Eighth Amendment); Morgan v. Rowland, No. 3:01cv1107(CFD), 2006 WL 695813, at *6-8 (D. Conn. Mar. 17, 2006) (holding that requiring inmates to attend recreation wearing handcuffs and shackles did not violate Eighth Amendment). These cases may be distinguished from the facts here. In both Shakur and Morgan, the inmates did not dispute the fact that they were able to engage in vigorous exercise in their cells or argue that in-cell exercise failed to

satisfy the constitutional requirement of meaningful exercise. In Ruffino, the plaintiff alleged that wearing handcuffs required that he have a coat thrown over his shoulders resulting in cold symptoms and mental harm. Ruffino did not allege that the policy prevented him from engaging in meaningful exercise.

Absent evidence that defendants evaluated alternatives to ordering that all SRGSTM Phase I inmates be handcuffed behind their backs during recreation and the actual availability of meaningful exercise, the Court cannot determine whether defendants' chosen action was reasonable. Accordingly, defendants' motion for summary judgment on the ground that they are protected by qualified immunity is denied. See Williams v. Goord, 142 F. Supp. 2d 416, 428-29 (S.D.N.Y. 2001) (holding that defendants not entitled to qualified immunity if jury were to find that restraints deprived inmate of meaningful out-of-cell exercise and inmate not able to meaningfully exercise in his cell).

IV. Conclusion

Defendants' motion for summary judgment [**Doc. No. 14**] is **DENIED.**

This is **not** a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. #26] and, on January 21, 2011, the case was transferred to the undersigned for all purposes including the entry of judgment.

**SO ORDERED** this _6th_ day of April 2011, at Bridgeport, Connecticut.

                                             /s/

                                 Holly B. Fitzsimmons
                                 United States Magistrate Judge